3:24-mc-03005-CRL  # 30  Filed: 05/18/26  Page 1 of 8

E-FILED
Monday, 18 May, 2026 04:15:37 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| FIRST NATIONAL PROPERTY MANAGEMENT, L.L.C., <br>     Petitioner, <br><br> v. <br><br> JAMES MAY, <br>     Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> )     Case No. 24-mc-3005 <br> ) <br> ) <br> ) |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

### I.  BACKGROUND

Before the Court is Respondent James May's Rule 60(b) Motion to Vacate the order imposing civil contempt sanctions on May for failing to comply with a subpoena issued by Petitioner First National Property Management, L.L.C. (hereinafter "First National"). May was served with the subpoena on March 10, 2024, which sought the production of documents in ancillary litigation in New Jersey.[1] First National later commenced this miscellaneous case by moving to compel May's compliance with the subpoena in the New Jersey litigation. This Court ordered May to comply with the subpoena on or before July 16, 2024. On August 7, 2024, May certified that "after conducting a diligent search, he had been unable to locate any" documents responsive to the subpoena. On August 30,

---

[1] The underlying action is *First National Property Management, L.L.C. v. Kenneth Chapman*, No. 1:23-cv-603 (D.N.J. Feb. 3, 2023). May is a nonparty to that litigation.

2024, the Court closed this case after First National failed to file a statement indicating why it should remain open.

Several months later, First National moved for civil contempt sanctions based on May's alleged noncompliance with the subpoena. The Court granted the motion pursuant to Rule 45(g) after May failed to respond to the motion or appear at the hearing. The Court ordered May to pay $40,685.19 in attorneys' fees and costs to First National in accordance with its representations, and fined May $500 per day for each day that he continued to fail to comply with the subpoena.

May, now represented by counsel, filed the instant motion to vacate the sanctions. The Court held a hearing on the motion and ordered May to file a second certification detailing his efforts to comply with the subpoena. May certified that he specifically searched his cell phone for responsive records and recovered additional documents "from the cloud" with the assistance of counsel. He indicated that "those documents have been retendered to counsel" for First National "in an abundance of caution." (Doc. 23 at ¶ 2).

To resolve material factual disputes between the parties, the Court conducted an evidentiary hearing on the motion to vacate. The central factual dispute was whether May received proper service of First National's Motion for Civil Contempt Sanctions and the text order setting a hearing on the motion. After considering the evidence and assessing the credibility of the witnesses, the Court found May had not been properly served and vacated its Order imposing sanctions on him under Rule 60(b). First National

then proceeded on its motion for sanctions. Having received testimony from May, and upon consideration of the parties' arguments, the Court denied the motion on the record at the close of the hearing.

## II.  ANALYSIS

### A.  James May's Rule 60(b) Motion to Vacate

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a party from a final judgment, order, or proceeding based on any of the enumerated grounds in the Rule. May sought to vacate his sanctions under Rule 60(b)(1) for "excusable neglect" concerning his noncompliance (if any) with the subpoena, and under (b)(6), a catchall provision for any exceptional circumstance that justifies relief. Based on the Court's determination that May had not been properly served with the motion and notice of the hearing, the Court vacated the sanctions order as an exceptional circumstance within Rule 60(b)(6), without need for consideration of (b)(1).[2]

Minimum due process requires notice "of the time and place of hearing on the propriety of a contempt order" to ensure the alleged contemnor a "fair opportunity to be heard." *United States SEC v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010). Notice for contempt

---

[2] The Supreme Court has said that Rule 60(b)(6), the catchall provision, is only available to litigants when (b)(1) through (b)(5) are inapplicable. *Kemp v. United States*, 596 U.S. 528, 533 (2022). In other words, a litigant cannot avail himself of both (b)(6) and, for example, (b)(1), on the same factual basis. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988) (holding that Rule 60(b) clauses are "mutually exclusive"). Here, any failure by First National to effectuate service on May cannot fall into (b)(1)'s "excusable neglect" standard because *that* negligence is not attributable to May. *See id.* (concluding that (b)(1) did not apply where there was no neglect on the 60(b) movant's behalf, but instead on behalf of a judge); *Koblosh v. Adelsick*, No. 95 C 5209, 1997 U.S. Dist. LEXIS 3660, at *6 (N.D. Ill. Mar. 26, 1997) ("In situations in which the failure to comply with a court order is *attributable to negligence on the part of the movant*, the 'excusable neglect' standard is appropriate." (emphasis added)). Rule 60(b)(6) is therefore the proper avenue for analysis.

proceedings in federal courts is generally "satisfied by service that conforms to Federal Rule of Civil Procedure 5(b)."-*Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 747 (7th Cir. 2007) (citing 4B Charles A. Wright and Arthur R. Miller, *Fed. Prac. & Proc.* § 1145 (3d ed. 2002) ("Direct service as required by Rule 4 for process is not required by Rule 5(b) since a civil contempt proceeding is an extension of the main action and personal jurisdiction need not be reasserted under Rule 4."). Though, "[i]n any case, the focus must be on notifying the alleged contemnor, rather than on the formalities of notification procedures." *Id.* at 748.

While First National attempted service of its motion and the hearing in several ways, the attempts did not comport with the Federal Rules of Civil Procedure or place May on notice of said proceeding. To begin, First National emailed a copy of the motion and notice of the hearing to May's counsel in a separate New York action, who also represented him in the underlying New Jersey litigation. That counsel—who does not represent May here—refused to accept service for this action in Illinois. First National next attempted personal service in Illinois at one of May's four homes. That attempt failed as May had been out of the country for an extended period of time. The server, however, contacted May over the phone, stating only, "We have some papers for you." (Tr. 11/20/25 at 8:19–24). May expressed confusion, remarking that he believed his lawyer (in the New York and underlying New Jersey actions) "knew about this."[3] (Doc. 18 at 4).

---

[3] As established at the evidentiary hearing, there were, at times relevant, four separate actions concerning May and First National: two in the district of New Jersey (underlying action is case number 1:23-cv-603, and the other New Jersey action is case number 3:25-cv-1119), one in the Eastern District of New York (case

First National thereafter mailed a copy of the documents via Federal Express[4] to two addresses: one in Florida (an address to May's investment property) and the other in Illinois (an address where May does reside). But May, having been away from his Illinois residence during that time, credibly testified that he only learned of the motion for sanctions when he received a notice in the mail that there was "40 some thousand dollars and $500 a day" in sanctions entered against him. (Tr. 11/20/2025 at 9:10–18).

May could potentially have been put on notice, for purposes here, if counsel for First National had simply emailed him the motion and notice of hearing, given their regular past practice of email communication. *See Autotech Techs.*, 499 F.3d at 748 (recognizing that notifying the alleged contemnor of the nature of the charges—to enable him to prepare a defense—is more important than "the formalities of notification procedures"). However, the Court finds May credibly testified that he was wholly unaware that a motion for sanctions had been filed against him in this case. *Contrast United States v. Iacona*, No. 11-cr-30120, 2020 U.S. Dist. LEXIS 195189, at *3 (S.D. Ill. Oct.

---

number 2:25-cv-780), and the present miscellaneous action in the Central District of Illinois. May was unrepresented in this Illinois action up and until sanctions were entered against him.

[4] Relying upon dicta from the Seventh Circuit and rulings from other circuit courts, some district courts in this Circuit have held Federal Express (or "FedEx") to be an improper "mail" server for purposes of Rule 5(b). *See, e.g., United States v. Elisea*, No. 17 CR 730, 2019 U.S. Dist. LEXIS 212285, at *10–11 (N.D. Ill. Dec. 10, 2019) (citing *Audio Enters., Inc. v. B&W Loudspeakers*, 957 F.2d 406, 409 (7th Cir. 1992); *Prince v. Poulos*, 876 F.2d 30, 34 n.1 (5th Cir. 1989)) ("Many courts [] have found that FedEx does not constitute 'mail' [under Fed. R. Civ. P. 5(b)] when the recipient does not actually receive the package."); *Stepp v. Rexnord Indus.*, No. 13-cv-0683, 2014 U.S. Dist. LEXIS 107686, at *10–11 (S.D. Ind. Aug. 5, 2014) (collecting cases and explaining that "'[m]ail' in the context of the Federal Rules of Civil Procedure" does not include "deliveries performed by private carriers, such as Federal Express"); *see also Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1431 (9th Cir. 1996) ("Federal Express does not satisfy the requirements of Rule 5(b)," as "there is little doubt that 'mail' meant 'U.S. mail' in 1937, when Rule 5 was adopted"). But what's important for our purposes is that May, who had been traveling, had not personally received the FedEx mail at least until after the Court's judgment had been entered. (Tr. 11/20/2025 8:25; 9:1–18).

21, 2020) (contempt sanctions warranted for noncompliance where the defendant had "been given notice of the possibility of contempt sanctions and the opportunity to be heard"). Because entering civil contempt sanctions against May without his notice and an opportunity to respond deprived him of due process, the Court determined at the hearing that the unique circumstances justified May's requested relief from the Order. *See Hyatt*, 621 F.3d at 690–91 (vacating contempt order due to insufficient notice of contempt hearing where alleged contemnor failed to appear).

### B. First National's Rule 45(g) Motion for Civil Contempt Sanctions

With the Court's Order vacated, First National requested to proceed on its motion for civil contempt sanctions under Rule 45(g). That Rule allows a "court for the district where compliance [with a subpoena] is required" to hold a nonparty in contempt "who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). Movants for contempt must prove "by clear and convincing evidence" that "(1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply."[5] *Hyatt*, 621 F.3d at

---

[5] The Seventh Circuit also described another consideration in dicta: Whether the "movant suffered harm as a result" of the alleged contemnor's noncompliance with the court order. *De Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 591 (7th Cir. 2008) (quoting *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)). While unnecessary for the ruling here, there was little harm, if any, to First National. First National could have retrieved the responsive documents it complains of by means other than through this Court— in fact, many of the documents First National seeks exist on First National's own email server. And First National contends that "its legal strategy in the District of New Jersey action would have substantially differed" if it had received documents from May about seven months earlier than it did, explaining that it

Page 6 of 8

692 (citation omitted). Upon a finding of civil contempt, a court may craft "sanctions to coerce obedience to the court's orders and compensate the [movant] for losses." *Teledyne Techs. Inc. v. Shekar*, 739 F. App'x 347, 351 (7th Cir. 2018) (citing *Connolly v. J.T. Ventures*, 851 F.2d 930, 932–33 (7th Cir. 1988)).

It is undisputed that May was subject to the unambiguous commands of this Court's Order mandating his compliance with the underlying subpoena. While May violated those commands by failing to produce responsive documents in his possession at the time of his first certification in 2024, the Court finds the violation was not significant as May substantially complied with the subpoena. At the time of his first certification in 2024, May was unaware of how to retrieve documents from the cloud and did not believe any documents existed in the cloud. May later attached responsive documents to a complaint in New York against First National, and First National — now having received the documents by virtue of the complaint — protests that it was in the wrong forum.[6] After the Sanctions Order was entered, May through his counsel in Illinois utilized the services of a computer software program to retrieve the responsive documents. And contrary to

___

later moved for an order for contempt and sanctions there, but First National made no indication how strategy *would* have differed, substantially or otherwise. (Doc. 19 at 10).

[6] At this point in February of 2025, following May's commencement of the new action, First National learned May had not provided responsive documents at the time of his 2024 certification and subsequently filed its motion for sanctions in this case. Despite having then received those documents, First National took issue with the manner and place in which they were tendered: attached to a complaint in New York. Based on that, First National contends May was purposefully withholding documents in 2024 and is "lying" about what else might be out there. (Doc. 12-1 at 1; Tr. 11/20/2025 at 121:18). Presumably bearing on the fourth prong of *Hyatt*, it, however, makes little sense why May would purposefully withhold documents from First National and then subsequently attach those documents to a complaint against First National.

First National's unsupported and speculative contentions otherwise, the evidence indicates that all responsive documents have been turned over.

Taken together, these facts demonstrate not only May's substantial compliance with the subpoena, but also the reasonable and diligent efforts taken by him to comply. Based on his *pro se* status and the concurrent multiple lawsuits concerning the same parties, the *Hyatt* factors warrant against finding May in civil contempt.

## III.    CONCLUSION

Based on the foregoing reasons and those discussed at the evidentiary hearing on this matter, the Court GRANTS Respondent James May's Motion to Vacate (Doc. 18), and DENIES First National Property Management, L.L.C.'s Motion for Civil Contempt Sanctions (Doc. 12). The Clerk is directed to close this case.

ENTER: May 18, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE